Michael BLACK & Carrie Black,
Plaintiffs–Appellants,

v.

U–HAUL COMPANY OF MISSOURI,
Defendant–Respondent.

No. ED 86510.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 5, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 11, 2006.

Application for Transfer Denied
Nov. 21, 2006.

Leonard P. Cervantes, Jennifer Suttmoeller, Cervantes & Associates, St. Louis, MO, for appellants.

Rodney E. Loomer, Springfield, MO, for respondent.

KENNETH M. ROMINES, Judge.

### *Introduction*

Plaintiff–Appellants Michael and Carrie Black (collectively "the Blacks") appeal from the judgment of the Circuit Court of the City of St. Louis, the Honorable Margaret M. Neill presiding, after a jury found in favor of Defendant U–Haul Company of Missouri ("U–Haul") and Defendant Hussain Qassim Al–Owaid ("Al–Owaid") in the Black's wrongful death action. We affirm.[1]

### *Factual and Procedural Background*

The record in this case reveals that on 1 July 1999, the Blacks' daughter, Michelle, and her friend, Al–Owaid, were driving on an interstate highway in Indiana when they were involved in an accident in which Michelle was killed and Al–Owaid was seriously injured. At the time of the accident, Al–Owaid was driving and Michelle was a passenger. The case was tried on competing theories of liability: (1) that Al–Owaid lost control of the truck while attempting to pass a vehicle in front of him, and swerved across the median into oncoming traffic; and (2) that the accident was caused by a serious steering or braking malfunction.

Michelle's parents subsequently filed this wrongful death suit against several defendants. First, the Blacks named U–Haul, and alleged strict liability as well as liability based on negligent repair of the truck involved in the accident. Second, the Blacks named Al–Owaid, and alleged that he negligently operated the truck,

---

1. In addition, the Blacks' motion to supplement the legal file with the deposition testimony of Al–Owaid is granted.

causing the accident. Finally, the Blacks named John Haus d/b/a John's 66 ("Haus")—Haus was the local U–Haul dealer who rented and delivered possession of the truck to Al–Owaid and Michelle.[2]

The Black's primary theory against U–Haul was that its mechanics had improperly serviced the truck the day before it was rented to Al–Owaid and Michelle. Specifically, the Blacks alleged that U–Haul's mechanics had failed to install a critical cotter pin into the wheel assembly upon reassembling it, and that this omission ultimately led to the failure of the steering and braking mechanism, causing Al–Owaid to lose control of the vehicle while driving under normal conditions. In the alternative, the Blacks pled that Al–Owaid negligently operated the truck, thus causing him to lose control and veer into oncoming traffic.[3]

At trial there was a great deal of evidence presented by both sides concerning the cause of the accident, which was the central issue in dispute. U–Haul's primary theory of defense was that Al–Owaid came upon a slower-moving car in his lane, and in an attempt to pass this car at the last moment, swerved too sharply, thus causing him to lose control of the truck and veer into oncoming traffic in the other lane.

Al–Owaid does not dispute that he was attempting to pass a slower moving car when he lost control of the truck. However, he claimed that as he was steering to avoid the car in front of him, the steering and brake mechanisms failed, thus causing him to lose control of the truck and veer into the other lane. The initial police investigation attributed "steering failure" as the root cause of the accident. Moreover, the police report did not ascribe driver error as a cause of the accident. At trial, evidence was presented that both the left and right front tire "spindles" did not have cotter pins, and that the absence of the left cotter pin allowed the left "retaining nut" to come loose, which ultimately led to the failure of the steering system and the collision with the oncoming tractor trailer.[4]

Furthermore, the Blacks presented evidence that on 29 June 1999, just two days before the accident in question, U–Haul's mechanics performed a routine preventative maintenance check of the brake system. During the course of the maintenance check, the front brake systems were disassembled and reassembled, and it was at this time that the Blacks allege the critical cotter pin was not replaced, an omission they alleged ultimately led to the accident. The Blacks' expert witness, Thomas Russell, testified that U–Haul's mechanic's failure to install the cotter pins could allow the steering assembly to come loose while driving, which would result in a loss of steering ability consistent with the testimony of Al–Owaid. Mr. Russell testified that such a truck without a cotter pin is "defective" and "unreasonably dangerous." In addition, the Black's expert,

2. The Blacks ultimately dismissed defendant Haus during the trial. In addition, the Blacks named two other defendants in the original suit: U–Haul of Tennessee and U–Haul International, Inc. However, the trial court entered directed verdicts in their favor at the conclusion of the Blacks' case. Since these claims are not the subject of this appeal, they will not be discussed further.

3. In addition, Al–Owaid asserted a claim against U–Haul, as well as a cross-claim for contribution in the event he was found partially liable to the Blacks. However, as these claims are not the subject of this appeal, they will not be discussed further.

4. The cotter pin at issue in this case has as its principle purpose keeping the nuts, washers, and other pieces of the spindle tight and stable.

Mark Ezra, testified that the failure of the steering system would also lead to a failure of the braking system, and these failures would be consistent with Al–Owaid's testimony that he was unable to stop the truck after losing control.

U–Haul's primary defense theory was that Al–Owaid lost control of the truck as he attempted to pass a slower moving car in front of him. In support of this theory, U–Haul presented expert testimony that the truck's brake assembly contained the properly installed cotter pins that the Blacks alleged were missing. Regarding U–Haul's driver error theory, U–Haul presented the testimony of an "accident reconstructionist," Dr. Charles Moffatt, who testified to two key facts that he believed contributed to Al–Owaid losing control of the truck: (1) that the car Al–Owaid attempted to pass was "a little more than a car length" in front of him when he began to steer around it; and (2) that Al–Owaid's steering angle, while attempting to pass the car, was "much sharper than normal." Additionally, Dr. Moffatt presented a computer-animated video exhibit which demonstrated how the accident occurred. Specifically, the exhibit illustrated that Al–Owaid was approximately one car length behind the vehicle when he attempted to pass, and also illustrated the sharp angle at which the pass was made.

U–Haul then presented the testimony of Fred Semke, a mechanical engineer, who testified that approximately eight weeks after the accident occurred, a "retainer nut" was found at the accident scene, and that he believed the nut came from the U–Haul truck Al–Owaid was driving. The finding of this nut was important because it supported Semke's assertion that the left wheel assembly was properly secured by the cotter pin at the time of the accident, thus contradicting the Blacks' theory that it was not. This testimony, when combined with other expert testimony, supported U–Haul's overall theory that the left spindle was properly secured, and thus, that a steering malfunction was *not* the cause of the accident.

Finally, U–Haul presented the testimony of one of its employees, Michael Mikhailov, who testified that he performed two driving tests with a truck virtually identical to the one involved in the accident. In the first test, the entire braking and steering mechanisms were adjusted to factory specifications, and the truck was driven under conditions similar to those immediately preceding the accident. The purpose of this test was to demonstrate the truck's normal steering and handling capabilities. In the second test, the cotter pin was removed from the front left spindle, and the last supporting nut was placed on the loosest point of the spindle, thus simulating the condition of the left spindle according to the Black's theory of the case. The truck was then driven at speeds similar to those being driven by Al–Owaid at the time of the accident. According to Mikhailov, however, the truck maintained all of its normal steering and handling abilities, even though there was no cotter pin in place and the supporting nut was in the loosest position. The test truck was driven approximately 10 miles during the second test, as opposed to the 250 miles that Al–Owaid had driven the truck involved in the accident.

At the conclusion of all the evidence, the Blacks submitted their case against U–Haul based on strict liability and negligence for allegedly failing to install the left cotter pin. In addition, the Blacks submitted their case against Al–Owaid for general negligence, alleging that he followed another car too closely and drove on the wrong side of the road. The jury returned a verdict in favor of both defendants on all counts. This appeal followed.

### Discussion

The Blacks bring the following four claims of error: (1) that the trial court erred in admitting the opinion testimony of Dr. Moffatt regarding the distance between Al–Owaid's truck and the car he was attempting to pass, as well as the angle at which the pass was made; (2) that the trial court erred in admitting the computer animation which was premised upon Dr. Moffatt's opinions referenced in the first claim of error; (3) that the trial court erred in admitting U–Haul's driving test video; and (4) that the trial court erred in admitting the testimony of U–Haul's witness, Fred Semke, who testified about the retainer nut found eight weeks after the accident.[5]

Since each claim involves a challenge to the admission of expert testimony, we review the trial court's decision for an abuse of discretion. *McGuire v. Seltsam,* 138 S.W.3d 718, 720 (Mo. banc 2004). The trial court's standard regarding the admissibility of expert evidence in a civil case is governed by statute, and provides that: "if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Section 490.065 RSMo. (2000).[6] Furthermore, Missouri courts have held that Section 490.065 requires trial courts to consider "whether experts in the field reasonably rely on the type of facts and data used by the expert or if the methodology is otherwise reasonably reliable." *McGuire,* 138 S.W.3d at 721. If the expert's opinion is

not so supported, then the testimony is inadmissible. *Id.*

### I. Dr. Moffatt's Testimony

■ In their first claim of error, the Blacks argue that the trial court erred in admitting certain testimony of U–Haul's expert witness, Dr. Charles Moffatt, who testified that: (1) the car Al–Owaid attempted to pass was "a little more than a car length" in front of him when he began the fateful turning maneuver; and (2) Al–Owaid's turning angle while attempting to pass this car was "much sharper than normal." The Blacks argue that this testimony was erroneously admitted because Dr. Moffatt had an insufficient evidentiary basis upon which to make these statements. They argue that the only possible basis for this testimony was Al–Owaid's deposition testimony, and that Al–Owaid made no such statements concerning the distance of the car in front of him or the angle of his turn. We disagree.

Upon reviewing the record, we find that the trial court did not abuse its discretion in admitting Dr. Moffatt's testimony regarding these two disputed facts, and indeed gave reasoned consideration before admitting this testimony. We reach this conclusion because, as U–Haul noted in its brief, Dr. Moffatt's testimony was based on a variety of evidence, including Al–Owaid's deposition testimony, photographs of the accident scene, Dr. Moffatt's personal inspection of the accident scene and marks left by the vehicles, as well as the deposition testimony of other key witnesses. Specifically, upon reviewing Al–Owaid's deposition testimony, we note that although Al–Owaid did not use Dr. Mof-

---

**5.** We note that in the Blacks' Amended Motion for a New Trial, their second point of error was that the jury's verdict was inconsistent because "either one defendant or the other or both contributed to cause the accident and thus the verdict was against the

weight of the evidence...." The Blacks abandoned this point of error on appeal.

**6.** All statutory references are to RSMo. (2000) unless otherwise indicated.

fat's precise language, "a little more than a car length," to describe the distance between the truck he was driving and the car he was attempting to pass, Al–Owaid nonetheless sufficiently indicated their relative positions using a diagram, and that this testimony, when combined with the other evidence, provided a basis for Dr. Moffatt to make the statements at issue. Furthermore, this evidence provided a sufficient evidentiary basis for Dr. Moffatt's assertion that Al–Owaid's passing angle was "much sharper than normal." Accordingly, the trial court did not abuse its discretion in admitting this evidence. Point denied.

## II. Charles Moffatt's Computer Animation

In their second claim of error, the Blacks argue that the trial court erred in admitting Dr. Moffatt's computer animation which was premised upon the two statements at issue in the Blacks' first claim of error. We disagree.

Because we have found that Dr. Moffatt had a sufficient evidentiary basis for making the two statements at issue in the Blacks' first claim of error, we likewise find that the trial court did not abuse its discretion in admitting this evidence for the same reasons. Point denied.

## III. U–Haul's Driving Test Video

■ In their third claim of error, the Blacks argue that the trial court abused its discretion in admitting U–Haul's videotape of two driving tests, conducted by U–Haul's employee, Michael Mikhailov. Specifically, the Blacks argue that this videotape evidence was inadmissible because the testing circumstances were substantially different from the circumstances of the accident, and thus, made the results unreliable. We disagree.

■ We note initially that videotape evidence may be admitted for two purposes: (1) to re-create events at issue in litigation; and (2) to illustrate physical properties or scientific principles that form the foundation for an expert's opinion. *Grose v. Nissan North America, Inc.,* 50 S.W.3d 825, 830 (Mo.App. E.D.2001). When a video attempts to re-create the original event, the essential conditions must be "substantially similar" to those existing at the time of the accident. *Id.* On the other hand, when the video is merely offered to illustrate the principles used in forming an opinion, the conditions need not be substantially similar. *Id.*

In this case, because we believe the trial court correctly determined that the videotape evidence in question was not offered to illustrate or re-create precisely how the accident occurred, we find the Blacks' argument that the testing circumstances and conditions were not substantially similar to those of the accident is irrelevant. We reach this conclusion because the trial court found that the video in question was merely offered to illustrate how a moving truck, virtually identical to the one being driven by Al–Owaid at the time of the accident, would handle and brake if the final supporting nut was placed in the loosest position on the left front spindle. In their brief, the Blacks make much of the fact that the test truck was only driven 10 miles, whereas Al–Owaid had driven the actual truck approximately 250 miles. However, we believe this fact is irrelevant to the issue of the admissibility of the video because the video was admitted for the limited purpose of illustrating how a truck would handle without a cotter pin and with the final supporting nut in the loosest position. On the other hand, the distance the test truck was driven would be highly relevant if the purpose of the test was to illustrate whether the supporting nut, initially placed in a tightened posi-

tion, but without the support of a cotter pin, would come loose under normal driving conditions. However, since this was not the purpose of the test, the trial court did not abuse its discretion in admitting this videotape evidence. Point denied.

### IV. Retainer Nut Found 8 Weeks After the Accident

■ In their fourth claim of error, the Blacks argue that the trial court abused its discretion in admitting the testimony of U–Haul's expert witness, Fred Semke, who testified about the retainer nut found eight weeks after the accident actually occurred. The Blacks argue that this line of testimony was inadmissible because Semke's conclusion that it came from the U–Haul truck in question is purely speculation and invaded the province of the jury. We disagree.

Mr. Semke's opinion had a sufficient evidentiary basis—namely his personal investigation of the entire accident scene, his personal inspection of the nut, the deposition testimony of other experts, and his review of accident reports (or the lack thereof) on that stretch of highway during the preceding eight months. Based upon this evidence, Mr. Semke's opinion that the nut in question came from Al–Owaid's U–Haul truck was not pure speculation. Furthermore, to the extent that Semke's opinion regarding the origin of the nut was somewhat uncertain, we believe this fact should bear on the weight of the evidence, not its admissibility. Accordingly, the trial court did not abuse its discretion in admitting this evidence. Point denied.

### Conclusion

In sum, experienced personal injury counsel aggressively tried their case before an experienced trial judge—herself an experienced personal injury lawyer—the jury was properly and fairly instructed on the parties competing theories, and a verdict consistent with Respondent's theory was returned.

AFFIRMED.

GLENN A. NORTON, P.J., and LAWRENCE E. MOONEY, J., concur.