**Susan O. McGUIRE, Appellant,**

v.

**Darrell K. SELTSAM**

**and**

**Gene Sandner, Respondents.**

No. SC 85988.

Supreme Court of Missouri,
En Banc.

July 1, 2004.

Rehearing Denied Aug. 3, 2004.

William D. Rotts, Columbia, MO, for Appellant.

Susan Ford Robertson, Columbia, MO, for Respondents.

PER CURIAM.[1]

Susan McGuire was involved in a traffic accident when struck by a tractor-trailer truck owned by S & S (Seltsam and Sandner) Seed Farms. McGuire's injuries were treated at a hospital. McGuire sued, alleging S & S was vicariously liable for the tractor-trailer driver's negligent operation. After trial, McGuire received a judgment of $45,000. Because S & S's expert witness' testimony did not meet the statutory standard, the judgment is reversed and the case is remanded.

McGuire's sole point on appeal contends that the trial court erred in admitting into evidence Dr. Elizabeth Pribor's testimony. Dr. Pribor, S & S's expert witness, is a forensic psychiatrist. She testified McGuire had a somatization disorder. This diagnosis was based on review of some of McGuire's medical records, but without examining or interviewing McGuire. As described by Dr. Pribor:

> Somatization disorder exists in an individual when they have several physical complaints for which either one of those two things is first true:
>
> Either that, when you do the proper organic workup, when you look into the history, they do not have anything

---

1. This Court transferred this case after opinion by the Court of Appeals, Western District, authored by the Honorable Joseph M. Ellis. *Mo. Const. article V, section 10.* Parts of that opinion are incorporated without further attribution.

wrong, or you have a person with some problems, medical problem, and the complaints are greatly in excess of that which the doctor would expect to see.

After you have one of those two, either one, you then have to have the person either seek out attention, i.e., go to a doctor, or take some form of medication or have a change in their life-style as a result of that.

And there has to be a minimum number of symptoms, as was already asked of me. The minimum, absolute minimum number is eight. But it's the rare patient with somatization disorder where you only have eight. That was really an attempt to make it a simple diagnosis for psychiatrists and especially non-psychiatrists, as most individuals have numerous symptoms.

That's one of the hallmarks of what they're looking for, an individual who goes to the doctor over and over and over again for many, many complaints over time, many of which, not all, many of which are either not substantiated by tests or clinical exam or they are greatly in excess of what you would expect.

■ McGuire argues that Dr. Pribor's testimony was improperly admitted under section 490.065 [2] because her diagnosis was based upon "assumption, surmise and incompetent facts in assuming there to be medical records indicating a history of affliction before 30 years of age even though there were no such facts in the record." [3]

■ Generally, it is within the trial court's sound discretion to admit or exclude an expert's testimony. *Johnson v. State*, 58 S.W.3d 496, 499 (Mo. banc 2001). A trial court will be found to have abused its discretion when a ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State v. Rutter*, 93 S.W.3d 714, 729 (Mo. banc 2002).

■ Section 490.065 is the standard for admitting expert testimony in civil cases. *State Bd. of Registration for the Healing Arts v. McDonagh*, 123 S.W.3d 146, 153

---

**2.** All statutory references are to RSMo 2000 unless otherwise noted.

Section 490.065 provides:

1. In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

2. Testimony by such an expert witness in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

3. The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

4. If a reasonable foundation is laid, an expert may testify in terms of opinion or inference and give the reasons therefor without the use of hypothetical questions, unless the court believes the use of a hypothetical question will make the expert's opinion more understandable or of greater assistance to the jury due to the particular facts of the case.

**3.** McGuire also argues that Dr. Pribor's testimony should have been excluded under the standards established in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Neither of these cases, however, governs the admission of expert testimony in Missouri civil cases—section 490.065 is controlling. *State Bd. of Registration for the Healing Arts v. McDonagh*, 123 S.W.3d 146, 153 (Mo. banc 2003).

(Mo. banc 2003). That section requires the court to consider whether experts in the field reasonably rely on the type of facts and data used by the expert or if the methodology is otherwise reasonably reliable. If not, the testimony is inadmissible. *Id.* at 157. Whether expert opinion testimony satisfies the requirements of section 490.065 is a matter of trial court discretion. *Bailey v. Cameron Mut. Ins. Co.*, 122 S.W.3d 599, 603 (Mo.App.2003).

Dr. Pribor was questioned prior to offering testimony as to her diagnosis of somatization disorder. She acknowledged that, under the standards recognized in her profession, in order for a person to be diagnosed with somatization disorder, the person must have begun having somatic complaints that are not substantiated by an organic cause prior to age 30. She further definitively testified that "[y]ou have to have evidence of some psychosomatic complaints before the age of 30" in order to make the diagnosis.

When asked what evidence she had found that McGuire had somatic complaints prior to age 30 that did not have any organic cause, Dr. Pribor offered the following testimony:

A: Well, sir, when you do cases like this and you only have records that go back to someone who's older than age 30, what you then have to look for is evidence in the records that these problems existed prior to that. And there are several references in the records of problems that Ms.—excuse me—Dr. McGuire had prior to the age of 30. Now, we're not—I was not given any records prior to 1988. . . . And she would have been 34 years old. So the only records I was allowed to review—I shouldn't say only. I mean, it sounds like actually there weren't many. Of the records I reviewed, the earliest ones, she was 34 years old. What one does,

then, as a physician, is to look through the records that would then indicate some of the problems existed prior to the age of 30.

\* \* \*

What I said is, the records, which start at the age of 34, point to, and for the most part at 35 and older, point to some complaints that she said have been around for a number of years, going back prior to the age of 30. And those complaints are psychosomatic complaints.

Q: Psychosomatic only if they are not supported by organic confirmation by a physician?

A: Oh, if the complaints—I mean, we haven't even gone into chronic or if the complaints are in excess of that which a doctor would expect to see.

Q: Doctor, where do you find in the records any of those findings before the age of 30 for Susan McGuire? Show me just one place where a doctor said this yeast infection didn't exist and/or she is overstating her symptoms. It's not there, is it?

A: Well, I think if you want to word the question differently, do I have any record before the age of 30, was I provided with any medical records whatsoever, psychosomatic or not, prior to the age of 30, and the answer is no.

Q: Doctor, isn't it true that you cannot, by this Introductory Textbook of Psychiatry, which defines somatization disorder, or the DSM IV, the practitioners' guide of how to reach findings of somatization disorder, say with any degree of certainty that Susan had some problem preceding the age of 30 that did not have a medically supported diagnosis that there was an organic foundation?

A: No, I'm not saying that. I can say that because of the very reason I just said. What you do as a physician, you look for the symptoms and then you also look to see that there are records prior, not—excuse me—that already references or signs that there were these symptoms prior to the age of 30. I feel certain, if I could have had all the records back to age 20 on, I would have plenty of examples. But I don't have that. What I have is 1,500 pages of records starting at age 35.

■ As previously noted, section 490.065 requires "that the facts or data on which an expert bases an opinion or inference 'must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject' and that these facts and data 'must be otherwise reasonably reliable.'" *McDonagh*, 123 S.W.3d at 156. Medical opinions based upon assumptions not supported in the evidence should not be admitted into evidence. *Hobbs v. Harken*, 969 S.W.2d 318, 322 (Mo.App.1998).

Dr. Pribor's assumption, that McGuire's medical records prior to 1988 would have contained evidence of somatic complaints and supported her diagnosis, is based upon speculation and conjecture. The records reviewed by Dr. Pribor in considering her diagnosis simply do not contain evidence from which Dr. Pribor could reasonably have made that assumption. Indeed, it appears that Dr. Pribor was making that assumption based upon her diagnosis and making her diagnosis, in part, based upon that assumption. This type of circular logic cannot form a reliable basis for an ex-

pert opinion. Accordingly, the trial court abused its discretion in finding that the facts and data upon which Dr. Pribor based her diagnosis were reasonably reliable and in admitting her testimony into evidence.

■ S & S argues that McGuire failed to establish that she suffered sufficient prejudice to warrant reversal. A determination of prejudice by the erroneous admission of evidence depends largely upon the facts and circumstances of the particular case. The appropriate question is whether the erroneously admitted evidence had any reasonable tendency to influence the verdict of the jury. *Chester v. Shockley*, 304 S.W.2d 831, 835 (Mo.1957).

The credibility of McGuire was the paramount issue in this case. Indeed, S & S's closing argument focused almost entirely upon that issue.[4] Dr. Pribor's testimony had a reasonable tendency to influence the jury's assessment of the credibility of McGuire's physical complaints and its award of damages. Under the facts of this case, Dr. Pribor's improperly admitted testimony had a reasonable tendency to influence the verdict of the jury.

The judgment of the trial court is reversed, and the case is remanded.

All concur.

---

4. S & S's closing argument focused on the nature and extent of McGuire's injuries, and counsel repeatedly stressed that the issues of causation and damages hinged upon the truthfulness and accuracy of the symptoms reported by McGuire. S & S's counsel told the jury, "You cannot rely on the accuracy and the truthfulness of what she reports about her symptoms." Counsel repeatedly accused McGuire of exaggerating her symptoms and made reference to her "psychiatric condition" in asserting that she was fabricating some of her testimony.