In the Matter of: The Care and Treatment of Harry TURNER a/k/a Harry D. Turner, Appellant,

v.

STATE of Missouri, Respondent.

No. SD 30638.

Missouri Court of Appeals, Southern District, Division Two.

May 18, 2011.

Erika R. Eliason, Columbia, MO, for Appellant.

Chris Koster, Attorney General and Jayne T. Woods, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

Harry Turner ("Appellant") appeals the judgment of the trial court committing him to secure confinement in the custody of the Department of Mental Health ("the Department") as a sexually violent predator ("SVP"). We affirm the judgment of the trial court.

## Facts and Procedural History

Appellant, at approximately age 14, began to notice his own attraction to prepubescent children; specifically, he was attracted to a nine-month-old girl that he fondled and touched numerous times until she was two years old. When Appellant was 16 years old, he molested a three-year-old girl. At approximately age 17, Appellant molested one of his two-year-old nieces, and at age 19, he molested another two-year-old niece, both by fondling their vaginas.

Thereafter, Appellant married and had two children. Appellant and his wife later divorced because he was sexually aggressive, forced her to have sex, and because she found Appellant looking at child pornography.

Following the divorce, Appellant forced his penis inside his three-year-old son's mouth. He also admitted fondling the vagina of a three-year-old girl while in the backseat of a vehicle driven by his sister-in-law. Appellant later admitted there could be as many as ten additional victims, but he could not remember their names.

In March 2001, Appellant was in his apartment with his neighbor's five-year-old daughter. Appellant was watching the girl while the neighbor was out. Appellant placed the girl on his bed, masturbated, touched his penis to her chest, and touched her vaginal area with his finger. His two sons were also in his room during this incident

Appellant spoke with Detective Nina Sala–Gault ("Detective Gault") of the Springfield Police Department, who was investigating that incident. During the interview, Appellant admitted molesting the victim. Appellant also told Detective Gault "if [she] let him go that he would do it again to some other child." Appellant indicated this victim was not the only child

he had molested. Appellant appeared to Detective Gault to be nervous and afraid; he kept telling her "he would do it again if he got out." At one point, Appellant advised Detective Gault that "if [she] let him go that he would try to kill himself in order to prevent doing it again." What Detective Gault remembered the most about the interview was Appellant "seemed convinced that he couldn't control his acts and that if he got out, he would molest other children." Appellant indicated "he could not control the impulses." Appellant said he wanted to kill himself "[b]ecause of the turmoil that he was in with battling his need to molest children and his lack of ability to control it...." Appellant also told Detective Gault: "Don't let me go out on the street, I will do it again, and the next time I will run."

Appellant later pled guilty to one count of first-degree child molestation and one count of sexual misconduct with a child. He was sentenced to two concurrent terms of four years' imprisonment.

While in prison, Appellant participated in the Missouri Sex Offender Program ("MOSOP"). Appellant completed Phase I, but was terminated from Phase II after approximately four months because he failed to grasp the basic concepts and did not appear to understand his own issues. Steven Fister, a Unit Director and Therapist for MOSOP explained, "if you don't ... understand what the things are that lead to the behavior, then you can't control them." Appellant could not understand his own motivators and disinhibitors that contributed to his sex-offending behavior. Appellant appeared to be comfortable with

his deviance and failed to demonstrate any insight into his offending behaviors.

Before Appellant's scheduled release from prison, the Attorney General's Office filed a petition to have him civilly committed as a SVP. After finding probable cause to believe Appellant was a SVP, the Circuit Court of Greene County, Probate Division, ordered the Department to conduct an evaluation of Appellant. Dr. Jeanette Simmons ("Dr. Simmons"),[1] a Missouri licensed forensic psychologist and Director of Psychology at Northwest Missouri Psychiatric Rehabilitation Center, conducted the evaluation.[2]

Dr. Simmons determined that Appellant suffered from the mental abnormality of "Pedophilia, Sexually Attracted to Both Males and Females, Nonexclusive Type." In evaluating Appellant's risk of reoffending, Dr. Simmons employed the adjusted actuarial approach wherein she found Appellant's likelihood of reoffense, based upon the STATIC–99 (an actuarial instrument), and then considered additional empirically-based dynamic factors to either raise or lower the recidivism rate provided by the instrument.

The STATIC–99 yielded a score of "2" for Appellant, placing him in the moderate-to-low risk category. However, Dr. Simmons believed the instrument underestimated Appellant's actual risk of reoffending based upon the existence of the following empirically-based dynamic factors known to increase risk: (1) Appellant's history of sexual deviance, (2) his termination from a sex offender treatment program, (3) his sporadic work history, (4) his poor institutional adjustment, (5) his commission of offenses in the presence of oth-

---

**1.** Dr. Simmons was known as "Jeanette Dunkin" at the time of the evaluation, but was known as "Jeanette Simmons" at the time of trial.

**2.** Dr. Simmons testified Appellant declined an offer to be interviewed. She explained it is accepted practice for these types of evaluations to be done based on a thorough record review without conducting an interview.

er people, and (6) his own admissions of an inability to control his urges. Dr. Simmons also believed that the STATIC–99 was an underestimate because it measures only a reconviction rate, not a reoffense rate; thus, it did not account for unknown victims.

As a result of her evaluation, Dr. Simmons opined that Appellant was more likely than not to commit acts of sexual violence if not confined to a secure facility and that he met the definition of a SVP under Missouri law.

Within the year before trial, during a reassessment, Appellant admitted he continued to have sexual thoughts about children and was avoiding television as a result.

On April 19, 2010, a jury trial was conducted. Detective Gault, Dr. Simmons and Mr. Fister testified as State witnesses.

Appellant presented Dr. Mitchell Flesher ("Dr. Flesher") in his defense. Like Dr. Simmons, Dr. Flesher diagnosed Appellant with the mental abnormality of pedophilia, but unlike Dr. Simmons, Dr. Flesher relied on the results of the STATIC–99 alone to conclude that Appellant was not more likely than not to reoffend if not confined. Consequently, Dr. Flesher opined Appellant did not meet the definition of a SVP. Appellant also testified.

The jury returned a verdict finding Appellant to be a SVP. The trial court then committed Appellant to the custody of the Department. This appeal followed.

Appellant contends there was insufficient evidence to clearly and convincingly prove he was more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility because Dr. Simmons' diagnoses was based on dynamic factors, which she improperly used to change Appellant's score to higher than "more likely than not." The State con-tends Appellant's sole challenge is to the credibility of the witness, which is left to the finder of fact. The issue for our determination is whether there was sufficient evidence to support the jury's verdict.

### Standard of Review

██ "We must determine whether the evidence was sufficient for twelve reasonable jurors to have believed beyond a reasonable doubt that [appellant] is a SVP." *Cokes v. State*, 183 S.W.3d 281, 282 (Mo. App. W.D.2005). "We view the record most favorably to the judgment, disregarding all contrary evidence and inferences, and will not reverse for insufficiency of the evidence unless there is a complete absence of probative facts supporting the judgment." *Dunivan v. State* 247 S.W.3d 77, 78 (Mo.App. S.D.2008).

### Analysis

██ A SVP is defined as a prior sexual offender " 'who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility.' " *Cokes*, 183 S.W.3d at 282 (quoting § 632.480(5)).

██ There is no dispute as to Appellant's prior sexual offender status and that he was diagnosed with pedophilia, which constitutes a mental abnormality. Appellant, however, challenges the sufficiency of evidence to demonstrate his mental abnormality makes him more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility. Specifically, Appellant claims Dr. Simmons' finding that Appellant was more likely than not to reoffend if not confined, is not worthy of belief because she employed an incorrect methodology when she adjusted the actuarial approach used through actuarial instruments like the STATIC–99 test. We disagree. Dr. Simmons' testimony,

along with the remainder of the evidence presented, constituted substantial evidence for the jury to find Appellant was a SVP.

"If a question exists as to whether proffered expert testimony is supported by a sufficient factual or scientific foundation, the question is one of *admissibility*, which must be raised by a timely objection or motion to strike." *O'Hara v. State*, 331 S.W.3d 319, 320 (Mo.App. S.D.2011). "Once an expert opinion has been admitted, as any other evidence, it may be relied upon for purposes of determining the *submissibility* of the case." *Id.* An appellant "cannot 'backdoor' an issue relating to the admissibility of expert testimony under the guise of a sufficiency of the evidence argument." *Id.*

Appellant's challenge as to the credibility of Dr. Simmons' testimony was a question for the jury to decide. Dr. Simmons' opinions, and almost the entirety of her testimony, were admitted without objection. Dr. Simmons testified extensively as to the basis for her opinion that Appellant was more likely than not to commit future predatory acts of sexual violence if not confined. Appellant had the opportunity to—and did—challenge the credibility of Dr. Simmons' opinions through both cross-examination and his own expert's opinion disputing the opinion of Dr. Simmons. "The credibility and weight of testimony are for the fact-finder to determine. The fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002) (internal citation omitted). The conflict in the evidence was nothing more than a factual issue for the jury to resolve in determining which expert opinion to credit in making its decision.[3]

The evidence presented was more than sufficient for the jury to determine beyond a reasonable doubt that Appellant's risk of reoffense was more likely than not because: (1) Appellant, himself, indicated multiple times he was unable to control his behavior and, if given the opportunity, he would molest again; (2) Dr. Simmons' expert opinion was that Appellant's risk for reoffense was more likely than not; (3) Appellant had an extensive history of engaging in predatory acts of sexual violence; (4) Appellant was terminated from MO-SOP because of his failure to understand his own motivators contributing to his sexual offending behavior; and (5) Appellant admitted to continued sexual thoughts about children in a recent reassessment. Accordingly, Appellant has not shown a "complete absence of probative fact" to support the judgment. *See In re Spencer*, 171 S.W.3d 813, 816 (Mo.App. S.D.2005) (internal citation omitted). Appellant's point is denied.

The judgment of the trial court is affirmed

RAHMEYER, P.J., and BATES, J., Concur.

**3.** *See also Barlow v. State*, 250 S.W.3d 725, 734 (Mo.App. W.D.2008) ("[appellant's] arguments about the fallacies of [the expert's] reasoning are nothing more than an attempt to have us reweigh the evidence in his favor."); *In re A.B.*, 334 S.W.3d 746 (Mo.App. E.D. 2011) ("Although Appellant criticizes the methodology utilized by [the expert] in coming to his conclusions, his testimony was admissible; his credentials are substantial; and after a review of the record, we find that the evidence which he presented to the jury was clear and convincing.")