GARY W. LYNCH, J.
Sterling Alton Mitchell appeals the trial court's judgment committing him to the custody of the Department of Mental Health following a jury finding that he is a sexually violent predator ("SVP"). See sections 632.480 through 632.513.[1] He claims in nine points relied on: (1) the "[t]rial court plainly erred in instructing the jurors to define 'more likely than not' for themselves[;]" (2) the "[t]rial court plainly erred in submitting verdict directing Instruction 6 to the jury without defining 'more likely than not' as used therein[;]" (3) "[t]he trial court plainly erred in failing to substitute the alternate juror for [a sleeping juror;]" (4) "the State's evidence was insufficient to support a commitment verdict ... in that the State failed to clearly and convincingly prove that any mental abnormality makes Mitchell more likely than not to commit future predatory acts of sexual violence if not confined[;]" and (5-9) the trial court erred in denying Mitchell's motion to dismiss. Because his first three points are not preserved for our review, his fourth point has no merit, and the latter five points have been resolved by our supreme court adverse to Mitchell's positions, we affirm.
Standard of Review and Applicable Principles of Law
Appellate review in an SVP case is limited to a determination of whether there was sufficient evidence admitted from which a reasonable jury could have found each necessary element by clear and convincing evidence. This means that the credibility of witnesses and the weight to be given to their testimony are for the jury to determine. This Court does not reweigh the evidence. Instead, we view the record most favorably to the judgment, disregarding all contrary evidence and inferences, and will not reverse for insufficiency of the evidence unless there is a complete absence of probative facts supporting the judgment.
In re Care and Treatment of Morgan , 398 S.W.3d 483, 485 (Mo. App. 2013) (internal citations and quotations omitted).
In order for Mitchell to be committed to the custody of the director of the Department of Mental Health under section 632.495(2), the State was required to prove two statutory elements: (1) that Mitchell "suffers from a mental abnormality which makes [him] more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility[;]" and (2) that Mitchell had pleaded guilty to or been found guilty of "a sexually violent offense[.]" Section 632.480(5)(a); see also In re Morgan , 398 S.W.3d at 485. Statutory sodomy in the first degree is a sexually violent offense. Section 632.480(4).
Factual and Procedural Background
Mitchell has previously been convicted of statutory sodomy in the first degree. Although not captured by his criminal record, *253 Mitchell's history of assaulting children began when he was 14 years old and continued throughout his life. By Mitchell's account, there have been 15 victims over his lifetime, although he was not prosecuted for all. He was 59 years old at the time of his last offense. While imprisoned, Mitchell was enrolled in the Missouri Sexual Offender Program (MoSOP) but did not complete it. He later re-enrolled and graduated, but he made a joke that was disparaging toward women during the graduation ceremony. Then, on a post-program test, Mitchell indicated that he strongly agreed that "adults having sex with children can be helpful." The test also indicated that Mitchell repeatedly attempted to minimize and justify his conduct, for example, by noting that he only used digital penetration or by concluding that his conduct was acceptable because he wasn't receiving sex from adult women.
Before Mitchell was released from prison, the State petitioned for him to be committed to the Department of Mental Health. At trial, the State called two expert witnesses who testified that Mitchell was more likely than not to reoffend.
Dr. Christopher Robertson, a forensic psychologist with the Department of Mental Health, reviewed Mitchell's psychological and criminal history before interviewing him. In his interview, Mitchell described himself as having an "unconscious" attraction to children. Dr. Robertson concluded that Mitchell met the criteria for pedophilic disorder as set forth in the Diagnostic and Statistical Manual. Pedophilia is a lifelong condition-the attraction to children will never go away.
In determining an offender's potential for reoffense, Dr. Robertson typically used "an actuarial risk instrument;" although, he also relies on his own "clinical psychology background and on occasion common sense." The actuarial tool utilized by Dr. Robertson is called the Static-2002 Revised. It is so named because it analyzes offenders based on "static" factors such as age and one's history of sexual offenses. This tool indicated that Mitchell was in the low-medium range for reoffense. According to Dr. Robinson, researchers are beginning to acknowledge that the risk for reoffense must also include analysis of "dynamic" factors such as sexual preoccupation, grievances, and poor cognitive problem-solving. Dr. Robertson disagreed with the results of the Static-2002 Revised based on his examination (which included dynamic factors) and concluded that Mitchell was more likely than not to reoffend.
Dr. Nena Kircher, a psychologist with Southeast Missouri Mental Health, reviewed Mitchell's "Department of Corrections records, including things like probation and parole reports that would have contained the history of his offense, his conduct within the Department of Corrections[;]" reviewed "his MoSOP ... records, which would have contained the details of his treatment and his progress through treatment, including any difficulties he had during that time[;]" and "met with him also in person for an interview." During their interview, Mitchell stated that he was "sexually attracted to children because they show affection, are easier to control and manipulate, and are vulnerable and helpless[ ]" but that "he didn't think he would offend [again] because he wasn't going to isolate." Dr. Kircher found Mitchell's plan to be "unrealistic" because "none of us could really have other people around us 24/7 to essentially protect us from ourselves[.]" Mitchell also hoped to volunteer after release by building bicycles for children. This connection concerned Dr. Kircher, who would recommend only focusing on "hobbies that involve adults[.]"
Based on her examination, Dr. Kircher also diagnosed Mitchell with pedophilic disorder and concluded that he had a mental *254 abnormality. Dr. Kircher utilized an actuarial tool known as the Static-99R and a non-actuarial tool known as the Stable 2007 in considering Mitchell's chances of reoffending. She also considered "protective factors[,]" which are factors separate from the tools that would reduce the likelihood of reoffending. According to Dr. Kircher, the Static-99R characterized Mitchell as low risk. She noted that the Static-99R considers historical characteristics; it does not consider the offender's present mentality. Although generally useful for establishing a baseline, the Static-99 was largely unhelpful to Dr. Kircher in Mitchell's case because he received his first conviction in his 40s-older than most individuals in the sample. Dr. Kircher also considered the Stable-2007, which resulted in a summary score of 16 for Mitchell. She testified that any score of 12 or higher indicates a "high need for further treatment." Including consideration of factors not contained within the actuarial tools, Dr. Kircher also concluded that Mitchell was more likely than not to reoffend.
The jury concluded that Mitchell was an SVP, and the trial court ordered him committed to the Department of Mental Health "until such time as [Mitchell's] mental abnormality has so changed that he is safe to be at large." Mitchell timely appealed.
Discussion [2]
Points One and Two-Plain Error Review Declined
Mitchell's first point relied on states that the "[t]rial court plainly erred in instructing the jurors to define 'more likely than not' for themselves, because this violated Mitchell's rights to a unanimous verdict, due process, a fair trial, and an impartial jury[.]" Mitchell's second point relied on states that the "[t]rial court plainly erred in submitting verdict directing Instruction 6 to the jury without defining 'more likely than not' as used therein, because this violated Mitchell's rights to a unanimous verdict, due process, a fair trial, and an impartial jury[.]" Mitchell requests plain error review due to his failure to properly preserve these issues for appellate review by making a timely objection at trial, see Stewart v. Partamian , 465 S.W.3d 51, 55 (Mo. banc 2015), and raising these claims of error in his motion for new trial, see Rule 78.07(a).[3]
Rule 84.13 provides that this court may consider "[p]lain errors affecting substantial rights ... in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."[4] Rule 84.13(c). Based on Rule 84.13(c), there are five alternatives a court may employ for appellate review of unpreserved error:
(1) declining to exercise its discretionary authority to review the point for plain error; (2) conducting plain error review and concluding that no error occurred; (3) conducting plain error review and concluding that an error occurred, but it was harmless and caused no prejudice to *255 the appellant; (4) conducting plain error review and concluding that a prejudicial error occurred, but it did not rise to the level of manifest injustice or miscarriage of justice and deny relief; or (5) conducting plain error review and concluding that the error rose to the level of manifest injustice or miscarriage of justice and grant relief.
Cornelious v. State , 351 S.W.3d 36, 42 (Mo. App. 2011). Of the five alternatives, the last-we conclude the alleged error prejudiced him and rose to the level of manifest injustice or miscarriage of justice-is the only mechanism by which Mitchell could be granted relief. Id.
Both of Mitchell's points fail for the same reason. In neither his point nor his argument does Mitchell assert or argue that the alleged error caused him prejudice that would rise to the level of manifest injustice or miscarriage of justice. We cannot craft that argument on his behalf. Moreland v. Div. of Employment Sec. , 273 S.W.3d 39, 42 (Mo. App. 2008). In the absence of such an argument, we are not generally inclined to, and will not in this case, exercise our discretion to conduct plain error review. Furthermore, in civil cases, we are extremely reluctant to invoke the plain error rule to cure counsel's failure to object.
Although we do have the discretion to review unpreserved claims for plain error, plain-error review is rarely applied in civil cases and may not be invoked to cure the mere failure to make proper and timely objections. Reversal for plain error in civil cases is only appropriate in those situations when the injustice of the error is so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case.
Ampleman v. Dish Network Serv., LLC , 467 S.W.3d 845, 849 (Mo. App. 2015) (internal citations and quotations omitted).[5] Nothing in Mitchell's brief even approaches an expressed, much less cogent, argument that either of these alleged errors were so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case. Our cursory review of the record confirms that they do not. Accordingly, we decline to exercise our discretion to engage in plain error review. Mitchell's first and second points are denied.
Point Three-Plain Error Review Waived
Mitchell's third point relied on argues that "[t]he trial court plainly erred in failing to substitute the alternate juror for Juror McKenna[.]" Following the close of evidence, the trial court noted that one juror had "slept through substantially all of the evidence" and commented that it would be "the Court's preference, generally, to substitute the sleeping juror for the alternate juror[.]" The State agreed that substitution was appropriate because a sleeping juror is "not beneficial to either party." Mitchell's counsel stated:
Judge, I would prefer that he remain on the jury. As I said, I didn't really see him sleeping. I saw him-I saw him with his head down, but he didn't look like he was asleep when I looked at him. And I prefer him as a juror, just based on what I recall things about [the alternate juror].
So if I have a say in it, I would rather waive whatever rights [the State] is concerned about. I don't think we have ineffective *256 assistance. But based on the other qualifications, I would prefer to leave him.
In addition to his counsel's statement, Mitchell then personally confirmed to the trial court that he would prefer to retain Juror McKenna on the jury. Plain error review is waived because Mitchell's counsel and Mitchell individually affirmatively conveyed to the trial court that they had no objection to Juror McKenna remaining on the jury.[6] State v. Johnson , 284 S.W.3d 561, 582 (Mo. banc 2009). Mitchell's third point is denied.
Point Four-Evidence was Sufficient
Mitchell's fourth point relied on states:
The trial court erred in denying Mitchell's motion for a directed verdict and in committing him as an SVP, because the State's evidence was insufficient to support a commitment verdict, depriving Mitchell of his rights to due process and a fair trial as guaranteed by U.S. Const. amends. V, VI, XIV, Mo. Const. art. I, §§ 2, 10, 18(a), and § 632.495, in that the State failed to clearly and convincingly prove that any mental abnormality makes Mitchell more likely than not to commit future predatory acts of sexual violence if not confined. Mitchell was prejudiced because he was committed when the evidence did not satisfy the criteria for commitment.
Dr. Robertson and Dr. Kircher both testified that Mitchell was more likely than not to reoffend. Mitchell did not object to the admission of this opinion testimony at trial. He argues now, however, that their testimony on this issue lacked the requisite probative force to support a verdict.
Mitchell contends that "[a]n expert opinion must be supported by the record; when it is not, it is insufficient to create a submissible case[,]" citing In re Care & Treatment of Morgan , 176 S.W.3d 200, 211 (Mo. App. 2005), and McGuire v. Seltsam , 138 S.W.3d 718, 722 (Mo. banc 2004). Mitchell's account of Morgan is accurate; however, the latter conclusion reached in Morgan is incorrect and should no longer be relied upon in support of that proposition.
In Morgan , the State called Dr. Bumby as an expert medical witness, and he "testified that he had determined that the offender suffered from the mental abnormality of pedophilia" and concluded that the offender "was more likely than not to engage in future predatory acts of sexual violence if not confined in a secure facility." Morgan , 176 S.W.3d at 203. The offender claimed on appeal that the trial court erred in overruling his motion for a directed verdict because reliance on that opinion was error and without it there was no evidence from which the jury could reasonably infer that he was more likely than not to engage in predatory acts. Id. at 204. Nothing in Morgan indicates that the offender timely objected at trial to the admission of Dr. Bumby's opinion testimony or that he challenged the admissibility of Dr. Bumby's opinion on appeal.
In concluding the resolution of the offender's sufficiency of the evidence claim in a single paragraph, the Morgan court initially noted that "for an expert's opinion to be admissible , it must be supported by the record." Morgan , 176 S.W.3d at 211 (citing McGuire , 138 S.W.3d at 722 ) (emphasis *257 added). This is a correct statement of the law set out by our supreme court in McGuire . The Morgan court then reviewed the record evidence purporting to support Dr. Bumby's opinion and concluded that there were no facts and data in the record supporting his opinion. Id. Then, the court concluded that "because Dr. Bumby's opinion was not supported by the record, it was not sufficient , in conjunction with the evidence of the [offender's] past acts of sexual violence, to create a submissible case on the issue of whether the [offender] was more likely than not to engage in future 'predatory acts' of sexual violence, as the State contends." Id. (emphasis added, original emphasis on 'predatory acts' omitted).
The Morgan court makes its submissibility conclusion, however, without any legal analysis as to how the cited McGuire admissibility holding supports it and without citation to any other supporting legal authority. This implicit purported logical leap ignores well-established case law distinguishing the admissibility of evidence from the submissibility of the case.
The distinction between the admissibility of an expert's opinion testimony and the submissibility of a plaintiff's case in reliance thereon was discussed previously in Callahan v. Cardinal Glennon Hosp., 863 S.W.2d 852, 860[4] (Mo. banc 1993). If a question exists as to whether the proffered opinion testimony of an expert is supported by a sufficient factual or scientific foundation, the question is one of admissibility. It must be raised by a timely objection or motion to strike.
Once opinion testimony has been admitted, as any other evidence, it may be relied upon for purposes of determining the submissibility of the case. See Goodman v. Allen Cab Company, 360 Mo. 1094, 232 S.W.2d 535, 539 (1950). The natural probative effect of this testimony is a consideration for the jury. De Moulin v. Roetheli, 354 Mo. 425, 189 S.W.2d 562, 565 (1945).
Washington by Washington v. Barnes Hosp. , 897 S.W.2d 611, 616 (Mo. banc 1995). "An appellant cannot 'back-door' an issue relating to the admissibility of expert testimony under the guise of a sufficiency of the evidence argument." In re Care & Treatment of Bradshaw , 375 S.W.3d 237, 243 (Mo. App. 2012).[7]
Mitchell's argument is identical to one raised and denied in In re Care & Treatment of Turner , 341 S.W.3d 750 (Mo. App. 2011).[8] There is no dispute as to Mitchell's prior sexual offender status and that he was diagnosed with pedophilia, which constitutes a mental abnormality. Id. at 753. Also as in Turner , Mitchell is specifically challenging "the sufficiency of evidence to demonstrate his mental abnormality makes him more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility." Id.
*258 And again as in Turner , Mitchell argues that the expert testimony is not worthy of belief because it "employed an incorrect methodology when [the expert] adjusted the actuarial approach[.]" Id. Mitchell "had the opportunity to-and did-challenge the credibility of [the expert] opinions through both cross-examination and his own expert's opinion[.]" Id. at 754. Therefore, the weight of that conflicting testimony was for the fact-finder. Id.
Mitchell's reliance on In re Care & Treatment of Coffel , 117 S.W.3d 116, 129 (Mo. App. 2003), to challenge the sufficiency of Dr. Robertson and Dr. Kircher's expert testimony is misplaced. Our supreme court has subsequently determined that Coffel's "ultimate holding did not speak to the sufficiency of the foundation of the expert testimony. Rather, the holding in Coffel stands only for the proposition that no reliable evidence was presented on female sexual offender recidivism and that without such evidence a finding that the female is more likely than not to reoffend could not be made." In re Care & Treatment of Elliott , 215 S.W.3d 88, 93-94 (Mo. banc 2007) (emphasis added). Coffel's holding has no applicability in this case. Mitchell's fourth point is denied.
Points Five, Six, Seven, Eight, and Nine-Constitutionality Claims Controlled by Supreme Court of Missouri Cases Kirk and Nelson[9]
Mitchell's fifth, sixth, seventh, eighth, and ninth points contend that the trial court erred in denying Mitchell's motion to dismiss because "there is no possibility of discharge under the SVPA[,]" creating an "unconstitutional conditional release scheme[;]" "there is no least restrictive environment[;]" "commitment under the Act is punitive[;]" section 632.480 permits commitment "without a showing that the individual has serious difficulty controlling his predatory, sexually violent behavior[;]" and "the use of the unfairly prejudicial term 'SVP' in the Act" and throughout trial "has an unfair biasing effect on jurors, leads to verdicts based on fear and retribution, and is irrelevant."
All of these claims have been heard and decided adversely to Mitchell's positions by our supreme court. In re Care & Treatment of Kirk , 520 S.W.3d 443, 449-52 (Mo. banc 2017) (addressing point five claim at 449-50, point six claim at 450-51, point seven claim at 449-452, and point eight claim at 451 ); In re Care & Treatment of Nelson , 521 S.W.3d 229, 232-33 (Mo. banc 2017) (addressing point seven claim at 232 and point nine claim at 232-233 ). This court is constitutionally bound to follow Kirk and Nelson as the latest controlling decisions of the Supreme Court of Missouri on these issues. Mo. Const. art. V, § 2 (1945) ; Inman v. Dominguez , 371 S.W.3d 921, 925 (Mo. App. 2012). We, therefore, need not consider or address Mitchell's arguments contrary to the holdings in Kirk and Nelson . Mitchell's remaining points are denied.
Decision
The trial court's judgment is affirmed.
MARY W. SHEFFIELD, P.J.-concurs
DON E. BURRELL, JR., J.-concurs

Statutory references are to RSMo Supp. 2014.

Mitchell's points relied on are not consecutively and sequentially numbered; two points are labeled number "II," no point is labeled number "III," and two points are labeled number "VII." In an effort to eliminate confusion by this irregular numbering scheme, we refer to each point relied on by its numerical order in the sequence of presentation of the nine points relied on in Mitchell's brief.

Mitchell's appellate counsel was not his trial counsel.

Rule references are to Missouri Court Rules (2017).

"[I]t is clear that SVP Act proceedings are civil in nature." In re Care & Treatment of Tyson , 249 S.W.3d 849, 853 (Mo. banc 2008).

While we employed a waiver analysis to deny this point, an invited error analysis would have yielded the same outcome. See In re Care & Treatment of Brown , 519 S.W.3d 848, 860 (Mo. App. 2017) (self-invited error cannot serve as grounds for reversal on plain error review).

There is at least one extremely practical reason for this rule. The only remedy available on appeal for a 'back-door' submissibility claim is a new trial. On the other hand, a timely, specific foundational objection at trial gives the trial court the opportunity to address alleged admissibility issues in many ways well short of the time and expense of a new trial and the attendant delay and inefficiency of an appeal to resolve the issue and a new trial to resolve the case.

The State argues that Mitchell's argument addresses admissibility in the guise of submissibility and relies on Turner . We note that Mitchell chose not to file a reply brief. Therefore, we are deprived of whatever argument Mitchell might have had in response to the State's position.

We recognize and appreciate Mitchell's candor in acknowledging that these issues were raised and denied in Kirk and Nelson and clarifying that he nevertheless raises them again here in order to "preserve these issues for future federal review."