

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

JESSICA SWISHER, )
)
Appellant, )
) WD87262
v. )
) OPINION FILED:
) March 25, 2025
DIRECTOR OF REVENUE, STATE )
OF MISSOURI, )
)
Respondent. )

**Appeal from the Circuit Court of Platte County, Missouri**
**The Honorable Susan M. Casey, Judge**

**Before Division Two:** Janet Sutton, Presiding Judge, and
Alok Ahuja and Mark D. Pfeiffer, Judges

Ms. Jessica Swisher ("Swisher") appeals from the judgment of the Circuit Court of

Platte County, Missouri ("trial court"), which after an evidentiary hearing, denied her

petition challenging the Director of Revenue's administrative revocation of her driving

privileges for refusing to submit to a chemical sobriety test. We affirm.

**Factual and Procedural Background**[1]

Under Missouri law, a police officer may seize a driver's license during a traffic stop or an arrest when (1) the officer has reasonable grounds to believe the driver is operating the vehicle while intoxicated and (2) the driver refuses to consent to a chemical sobriety test. § 302.574.1-2.[2] Following the seizure, the officer must create a sworn report of the encounter, which is then forwarded to the Department of Revenue. § 302.574.2. Upon receipt of the report, the Director of Revenue must revoke the driver's Missouri driving privileges for one year. § 302.574.3. The driver may then petition for a review hearing in the circuit court of the county where the stop or arrest occurred. § 302.574.4. The hearing is limited to determining: "(1) whether the driver was arrested or stopped; (2) whether the arresting officer had reasonable grounds to believe the driver was driving while intoxicated; and (3) whether the driver refused to submit to the chemical test." *Bruce v. Dep't of Revenue*, 323 S.W.3d 116, 119 (Mo. App. W.D. 2010). "Reasonable grounds [for purposes of section 302.574] is virtually synonymous with probable cause." *Urbaniak v. Dir. of Revenue*, 651 S.W.3d 853, 858 (Mo. App. W.D. 2022) (alteration in original) (quoting *White v. Dir. of Revenue*, 321 S.W.3d 298, 305 n.6 (Mo. banc 2010)).

---

[1] "We view the evidence in the light most favorable to the trial court's judgment." *Urbaniak v. Dir. of Revenue*, 651 S.W.3d 853, 857 n.2 (Mo. App. W.D. 2022) (citing *Collier v. Dir. of Revenue*, 603 S.W.3d 714, 715 n.1 (Mo. App. W.D. 2020)) (reviewing an against-the-weight-of-the-evidence challenge).

[2] All statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through November 5, 2023, unless otherwise indicated.

After a traffic stop on Sunday, November 5, 2023, Officer[3] seized Swisher's license, pursuant to section 302.574.1, because she refused to submit to a breathalyzer test. The Director then revoked her license for one year. Swisher challenged the revocation at a hearing before the trial court, arguing in relevant part that Officer lacked reasonable grounds to believe she was intoxicated while driving her vehicle.

At the hearing, the parties did not present any live testimony and relied on the following evidence relevant to this appeal: Officer's body cam, Officer's dash cam, and documents that included Officer's initial narrative report and Officer's alcohol-influence-report form. Officer's reports supported the following facts.

Shortly before 12:30 a.m., Officer observed Swisher exit out of a parking lot, turning right to travel southbound on a two-lane road. In exiting the lot, Swisher took such a wide right turn that she entered into the oncoming-traffic lane and then swerved into the correct lane, narrowly avoiding a head-on collision. Officer began pursuing Swisher without activating his emergency lights. During Officer's pursuit, Swisher continued driving erratically: her vehicle struggled to maintain its lane, going back and forth between the white line marking the shoulder and the double-yellow lines marking oncoming traffic; reached a top speed of fifty mph in a thirty-five-mph zone; and changed speeds dramatically. Officer activated his emergency lights, and Swisher pulled over.

Officer approached Swisher's vehicle and asked her if she knew why she had been stopped; she replied, "Absolutely not." Officer then asked Swisher if she remembered

---

[3] Pursuant to the directive of section 509.520.1(5) (Supp. IV 2024), we do not use any witness names in this opinion, other than parties to the underlying litigation.

nearly getting into a head-on collision; she replied, "I'm not from here, I have no idea."

So, Officer asked Swisher where she was coming from. She replied, "Up north." When

Officer pressed for a more specific answer, Swisher again said, "Up north." So, Officer

instead asked where she was going; Swisher replied, "Up south." Officer then asked

Swisher if she had consumed alcohol that night. When Swisher denied consuming

alcohol, Officer confronted her about her difficulty in maintaining her lane while driving.

Swisher responded, "No, I didn't realize it came from a two-way to a one-way. I was

trying to get on 29 Highway to get to southbound and I had no idea where I was." As

Officer spoke to her, he smelled a strong odor of alcohol on her breath and saw that her

eyes were watery, bloodshot, and glassy.

Swisher provided her license and insurance upon request. Officer returned to his

vehicle to check its status. Afterwards, Officer again asked Swisher if she consumed any

alcohol, which Swisher denied. Officer requested Swisher exit her vehicle to do a field

sobriety test. At first, Swisher refused, pointing to the road and saying "this is not safe."

Officer responded that they would conduct the sobriety tests in the parking lot, which was

immediately next to Swisher's vehicle on the side of the road. Swisher asked, "Where?"

When Officer pointed to the parking lot, Swisher asked, "How would I get to that?"

Officer explained that she could get out of her vehicle and walk along the side of the

road. Swisher agreed to exit her vehicle.

After Swisher exited her vehicle, she volunteered that she had a knife in her

pocket and a gun in her car; she allowed Officer to take her knife and place it in her

vehicle without incident. When they got to the parking lot, Officer informed Swisher that

4

he would begin field sobriety tests and asked if she had consumed any alcohol or drugs that night. Swisher denied consuming either. Officer then initiated a horizontal-gaze-nystagmus test ("HGN test") by asking Swisher to stand with her arms at her side. Swisher responded by exclaiming that she was a real estate agent and that she had been showing houses the whole day before heading home; then she complied with Officer's instructions.

After Officer administered the HGN test, he attempted to follow up with a vertical-gaze-nystagmus test, but Swisher asserted that test was not part of a field sobriety test—because she was wearing contacts—and refused. Swisher then said, "I think I told you I'm an attorney." When Officer responded that she had said she was a real estate agent, Swisher said that she was both.

Officer proceeded to the walk-and-turn test. But, Swisher said, "I'm good with that." Officer then sought to clarify whether she was refusing the walk-and-turn test, and Swisher asserted, "You have already cleared me with this test, and we are good to go." Officer asked, calmly, "how did I clear you?" Swisher began raising her voice and listed a series of questions that she believed Officer was required to ask before administering a field sobriety test. Officer attempted to interject that they had not reached the point for those questions, but Swisher continued. After she finished speaking, Officer asked if she would take the walk-and-turn test or the one-leg-stand test. Swisher refused both. Officer asked if she would submit to a breathalyzer. Swisher refused. Officer then arrested Swisher on suspicion of driving while intoxicated. While being handcuffed Swisher asserted, "I'm not intoxicated; you will not place me under arrest; this is

5

ridiculous." After Swisher was handcuffed, in a profanity laced tirade, she demanded to know Officer's basis for her arrest. Officer replied that she almost hit another car head-on; that she smelled of alcohol; and that she had shown six clues of intoxication during the HGN test.

At the police station, Officer read Swisher the required notice of Missouri's implied consent law and again requested that she take a breathalyzer test. Swisher refused.

Officer's dash cam and body cam (which this Court has reviewed) corroborated the entirety of his reports except that they began recording as he began pursuing Swisher, so they did not capture Swisher's near-miss with another vehicle.

In her sole point on appeal, Swisher argues the trial court erred in upholding the license revocation because its finding on the second prong—that the officer had reasonable grounds to believe she was driving while intoxicated—was against the weight of the evidence.

**Standard of Review**

Review of the revocation of a driver's license is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Connelly v. Dir. of Revenue*, 291 S.W.3d 318, 319 (Mo. App. W.D. 2009); *Walker v. Dir. of Revenue*, 137 S.W.3d 444, 446 (Mo. banc 2004). Therefore, the trial court's judgment will be affirmed unless there is no substantial evidence to support it, unless the decision is contrary to the weight of the evidence, or unless the trial court erroneously declares or applies the law. *Walker*, 137 S.W.3d at 446.

6

> Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence. The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong. A judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment.

*Wilmoth v. Dir. of Revenue*, 669 S.W.3d 102, 114 (Mo. banc 2023) (citations and internal quotation marks omitted). Against-the-weight-of-the-evidence review "takes into consideration which party has the burden of proof and that the circuit court is free to believe all, some, or none of the evidence offered to prove a contested fact, and the appellate court will not re-find facts based on credibility determinations through its own perspective." *Ivie v. Smith*, 439 S.W.3d 189, 206 (Mo. banc 2014).

**Analysis**

> The probable cause required for the suspension or revocation of a driver's license is the level of probable cause necessary to arrest a driver for an alcohol-related violation. That level of probable cause will exist when a police officer observes unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist. . . . There is a vast gulf between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt. The trial court must assess the facts by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer.

*Wilmoth*, 669 S.W.3d at 113 (quoting *White*, 321 S.W.3d at 309). "Even absent field sobriety tests, probable cause is proven using other indicators of intoxication such as: an odor of alcohol, behaviors, mannerisms, and physical expressions." *Smith v. Dir. of Revenue*, 594 S.W.3d 282, 284 (Mo. App. W.D. 2020). "[P]robable cause is determined

from the information known [by] the officer at the time of arrest." *Wilmoth*, 669 S.W.3d at 113.

The Director presented sufficient evidence to establish that Officer had probable cause to believe Swisher was operating her vehicle while intoxicated.

Officer observed Swisher's vehicle operating illegally and unusually: nearly colliding head-on with another vehicle by driving into oncoming traffic; speeding at fifty mph in a thirty-five-mph zone; changing speeds drastically and unpredictably; and swaying between the boundaries of its lane. Officer's reports and body cam also recorded numerous indicators of intoxication.

Officer observed that Swisher's breath smelled strongly of alcohol and that her eyes were glassy, watery, and bloodshot. *See Swan v. Dir. of Revenue*, 268 S.W.3d 422, 427 (Mo. App. W.D. 2008) ("Swan had a strong odor of alcohol, he had glassy and watery eyes, and he behaved in a belligerent and uncooperative manner.").

Swisher provided nonsensical and non-responsive answers to some of Officer's questions—such as her failure to acknowledge the near head-on collision when asked about it, her need to clarify how to walk to the parking lot immediately beside her vehicle, and her failure to remember which occupation she had just claimed to Officer. *See Edmisten v. Dir. of Revenue*, 92 S.W.3d 270, 274 (Mo. App. W.D. 2002) (citing Driver's denial of driving erratically as evidence of intoxication); *McCarthy v. Dir. of Revenue*, 120 S.W.3d 760, 763 (Mo. App. E.D. 2003) (citing a driver's unresponsive answers to the officer's questions as evidence of intoxication).

Swisher engaged in arrogant and combative behavior that culminated in an extended rant that incorrectly argued with Officer about his purported mistakes in administering a field sobriety test. *See Swan*, 268 S.W.3d at 427; *State v. Swalve*, 598 S.W.3d 682, 685 (Mo. App. E.D. 2020) ("After speaking with Defendant, [Sergeant] (who was trained to identify intoxicated persons in connection with his job, as it was casino policy to disallow intoxicated persons on the casino floor) believed that Defendant was intoxicated based on him being argumentative, slurring his speech, and appearing red in the face."); *Hager v. Dir. of Revenue*, 284 S.W.3d 192, 198 (Mo. App. S.D. 2009) ("After personally observing Hager, [Trooper] had reasonable grounds to believe that this error was the result of Hager's intoxicated condition. He was uncooperative, arrogant and profane when responding to questions.").

Finally, Swisher refused multiple field sobriety tests and a chemical sobriety test. Swisher contends that her refusal to submit to sobriety testing should be accorded no probative weight for supporting Officer's reasonable belief that she was intoxicated. Swisher acknowledges that Missouri courts have held many times that refusing a sobriety test is valid evidence of intoxication. *See Turner v. Dir. of Revenue*, 609 S.W.3d 492, 498 (Mo. App. W.D. 2020) ("Though field sobriety tests are not required, the refusal to take field sobriety tests constitutes evidence of intoxication in administrative license proceedings."); *Flaiz v. Dir. of Revenue*, 182 S.W.3d 244, 251 (Mo. App. W.D. 2005) ("[T]he respondent refused to submit to any field sobriety tests, which can also be used as evidence for a reasonable belief of intoxication."); *Hockman v. Dir. of Revenue*, 103 S.W.3d 382, 385 (Mo. App. W.D. 2003) ("The refusal to take a field sobriety test is also

9

evidence of intoxication."); *Edmisten*, 92 S.W.3d at 274 ("Contrary to the trial court's view of the law, the refusal to take field sobriety tests *is* evidence of intoxication.").

Nonetheless, Swisher asserts that these cases have all been wrongly decided and urges us not to follow them. To support this argument, Swisher cites to only one case: *City of St. Joseph v. Johnson*, 539 S.W.2d 784 (Mo. App. 1976). *Johnson* held that the trial court erred in admitting the driver's refusal to take a breathalyzer, reasoning "[w]e are persuaded the more rational and acceptable view is that the probative value of refusal is insufficient to provide an independent basis for admissibility." *Id.* at 787. This holding was superseded by statute. *Barnhart v. McNeill*, 775 S.W.2d 259, 261 (Mo. App. W.D. 1989) (citing *State v. Stevens*, 757 S.W.2d 229, 233 (Mo. App. E.D. 1988)) ("[The legislature] announced that evidence of a failure by a person to submit to the chemical test provided by § 577.020 would be admissible in criminal prosecutions under §§ 577.010 or 577.012 and a warning of such consequence must be given at the time that the test is presented. After the effective date of the statute, the decision in *City of St. Joseph*, *supra*, became irrelevant."). Thus, we find that Swisher's multiple refusals to take a field sobriety test or a breathalyzer test carry some probative weight on the probable cause issue.[4]

_____

[4] Furthermore, Swisher pursues this argument by suggesting that her refusals lack either logical or legal relevance, even though she did not raise any objection to the admissibility of her refusals at trial. In this manner, Swisher impermissibly attempts to use her against-the-weight-of-the-evidence challenge on appeal as a back door to raise a relevance objection that she failed to raise at trial, which constitutes a waiver of that issue on appeal. *Cf. In re Care & Treatment of Bradley v. State*, 554 S.W.3d 440, 455 (Mo. App. W.D. 2018) (citing *In re Care & Treatment of Turner v. State*, 341 S.W.3d 750, 754 (Mo. App. S.D. 2011)) (holding that an appellant may not backdoor an unpreserved

To combat the Director's evidence, Swisher identifies instances of her conduct that she asserts to be inconsistent with intoxicated behavior: she passed through two intersections without illegally ignoring traffic signals; she safely pulled over when Officer began flashing his emergency lights; she could operate her phone to pull up her proof of insurance; she could exit her car without assistance; she did not fall or stumble after exiting her vehicle; she volunteered that she had a knife on her person and allowed Officer to take it from her; and she did not sway while speaking with Officer. The absence of some indicators of intoxication, however, do not invalidate otherwise valid indicators supporting probable cause:

> Mr. Wilmoth relies on the deputy's testimony that he saw no signs of impairment in Mr. Wilmoth's driving as he pulled over immediately. The deputy did not observe "glassy" eyes, staring eyes, constricted pupils, slow reaction to light, dilated pupils, uncertain balance, swaying staggering, stumbling, falling, any other factors indicating problems with balance or walking, slurred speech, confused speech, incoherent speech, stuttering, mumbling, any other problems with speech, profanity, hiccups, belching, vomiting, fighting, or any other unusual actions that might indicate impairment, and Deputy Mazer did not notice anything about Mr. Wilmoth's clothes or footwear that indicated impairment. While such facts can be relevant in assessing whether a person is intoxicated, *the absence of those facts does not equate to a person not being intoxicated*.

*Wilmoth*, 669 S.W.3d at 115 (emphasis added) (holding that the trial court's finding of probable cause was not against the weight of the evidence).

Based on the evidence of intoxication presented by the Director, we find that the trial court could have reasonably concluded that Officer had reason to believe Swisher

---

challenge to the admissibility of evidence by way of a sufficiency-of-the-evidence challenge); *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 860 (Mo. banc 1993).

11

operated her vehicle while intoxicated.  Its denial of Swisher's petition was not against the weight of the evidence.  Point denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
Mark D. Pfeiffer, Judge

Janet Sutton, Presiding Judge, and Alok Ahuja, Judge, concur.